# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**NATIVE AMERICAN SERVICES CORP.,**

       Plaintiff,

vs.                                                          Civ. No. 09-584 WJ/ACT

**EL PASO TRENCH SAFETY, INC.,**
**LOUIS A. CEPEDA, JR., and**
**CASEY KENDALL**

       Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** comes before the Court on Third Party Plaintiff's Motion for Preliminary Injunction to Maintain the Integrity of the Water Line and to Prevent Alteration or Damage filed July 14, 2009 [Doc. 36] and Third Party Plaintiff's Motion for Preliminary Injunction to Prevent the Water Line from being Placed into Production until After Testing is Completed and Results Confirm Safety of Water Line filed July 14, 2009 [Doc. 40]. Plaintiff filed a response on July 28, 2009 [Doc. 48] and the Third Party Plaintiff filed their replies on August 12, 2009 [Doc. 54, 55.] The Court has reviewed the pleadings and the relevant law and will recommend that the motions be denied.[2]

---

[1] An Order of Reference was filed on July 20, 2009 [Doc. 45].

[2] The record before the Court is sufficient for the Court to make its determination, and a hearing would not aid the Court and therefore, it is not necessary. *Fisher v. Lynch*, 2007 WL 2225943 (D. Kan. 2007) citing *Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191 (Table), 1998 WL 339465, at *3 (10th Cir. June 10, 1998) (nothing in the Tenth Circuit authority requires evidentiary hearing before grant or denial of motion for preliminary injunction).

1.   On January 5, 2009, Native American Services Corp. ("NASCO" was awarded, as prime contractor with the U.S. Department of Homeland Security ("DHS"), certain construction work to be performed at the Federal Law Enforcement Training Facility ("FLETC"). On November 12, 2008, NASCO and El Paso Trench Safety, Inc., ("EPTS") entered into a subcontract which was for EPTS to perform certain work at the FLETC location.  NASCO alleges that "EPTS sub-tier contracted work under the Subcontract to other entities."  Complaint at ¶14. NASCO also alleges that it paid the five sub-tier contractor companies and EPTS has not reimbursed NASCO for the payments made to these companies.  Complaint at ¶17.  In addition, NASCO alleges that EPTS failed to complete their scope of work, specifically the storm drains and a hydrostatic pressure test of the water lines that EPTS had installed.  Complaint at ¶¶ 19, 20.  Finally, NASCO alleges that on May 12, 2009, it sent written notice to EPTS that it was not in compliance with the terms of the subcontract and NASCO was exercising its right to terminate the November 12, 2008, subcontract. Complaint at ¶23.

2.   EPTS filed a Third Party Complaint against NASCO.  EPTS alleges that NASCO interfered with an agreed schedule that caused the project to be delayed and resulted in expenses and costs to EPTS.

3.   In its first Motion for Preliminary Injunction [Doc. 36], EPTS asks the Court to issue an order that:

    a.    Native American be required to maintain and preserve the exact condition of the pipe and the installation of the pipe as it was left and as completed and accepted by NASCO on or about the 5th day of May, 2009 until such time that an objective, independent utility contractor has evaluated, reviewed, approved and certified the pipe work as being complete and in accordance with the specifications.

    b.    Native American is and should be required and directed to take all possible measures to maintain said condition of the pipe and the installation including but not limited to avoiding and taking all reasonable efforts to avoid the following or to prevent the

        following from occurring unless some positive, affirmative action is required, but only after receiving an order from the Court to take any such action that would otherwise be or constitute a violation of the Order in place in this matter.

    a. Modifying, changing, altering, revising, converting or affecting the layout of the pipe;

    b. Modifying, changing, altering, revising, converting or affecting the design of the water delivery system, including the pipe layout;

    c. Modifying, changing, altering, revising or altering any connections or valves or parts or components with the pipe system layout created and constructed by El Paso Trench Safety, Inc., including but not limited to the following:
        i) Blind flanges,
        ii) RPU valves,
        iii) RPI valves,
        iv) Two inch water meters,
        v) Fire hydrants, and,
        vi) All miscellaneous appurtences;

    d. Modifying, changing, altering, revising, converting or affecting any connections or valves or parts or components or connections with connecting or adjacent delivery systems or pipe systems that connect with or feed or deliver water to the pipe system layout created and constructed by El Paso Trench Safety, Inc.;

    e. Modifying, changing, altering, revising, converting or affecting the soil or trench or trenches or siding or top soil, including the grade and compaction and content as well as any and all support brackets or access covers or other monitoring or access devices;

    f. Prevent and avoid any damage to any of the foregoing parts and components and associated pipe systems and their parts and components; and,

    g. Take all reasonable precautionary measures to prevent and avoid any damage to the entire pipe system installed by El Paso Trench.

4. In its second Motion for Preliminary Injunction [Doc. 40], EPTS asks the Court to order the following:

    a. Native American be ordered and directed to not place the referenced water line into production or to allow any interconnection with any other lines or pumps or water treatment devices or other devices or lines or controls that might result in or could, even hypothetically or theoretically, allow for human consumption of any water that

        has passed through the referenced piping system until after and only after a bacteria test has been performed by a licensed and certified third party, certification by the U.S. Government required and certification particular to this job and this particular type of installation, biological laboratory or other entity and the results of said test or tests has been reported as being safe and the water within the standards and specifications for the project and in accordance with the subcontract specifications and the water certifiable as being safe for human consumption.

      b.     The references sample or samples of water that are obtained from the referenced pipeline are to be taken by and only by and exclusively by an independent party that determines what method of sampling the water is appropriate and what subsequent testing is appropriate and required and as determined to be required by and in accordance with the project specifications and the guidelines and policies as well as any additional local or national requirements of the U.S. or that particular entity for confirming and determining that the water sample is of a certain quality and at or above the required safe level of being free of contamination and contaminants as well as being bacteria free and being safe for human consumption under any and all circumstances and in accordance with and compliance with all American Water Works Association ("AWWA") specifications and standards.

    5.    To prevail on a motion for preliminary injunction pursuant to Federal Rule of Civil Procedure 65, the moving party must establish that: (1) it will suffer irreparable injury unless the injunction is issued; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1048 (10th Cir. 2007) (internal quotations omitted). A preliminary injunction is an extraordinary remedy and is intended merely to preserve the relative positions of the parties until the case is resolved on the merits. *Summum*, 483 F.3d at 1048. The right to relief must be clear and unequivocal before a preliminary injunction may issue. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) (quotations omitted).

    6.    EPTS cannot prevail on its motions. It relinquished control over the water line on May 8, 2009, two months prior to filing their motions. After they relinquished control, NASCO filed

documents that indicate they repaired leaks and completed various punch list items. Thus, EPTS cannot obtain the relief requested because the water pipe has been altered, modified and changed since it has relinquished control. As to bacteria testing, it has been completed. Thus, their motions will not "preserve the relative positions of the parties." *Summum*, 483 F.3d at 1048.

### A. EPTS has not shown it will suffer irreparable injury unless the injunctions are issued.

7.  EPTS asserts that its ability "to demonstrate the condition of the water line on the date that [EPTS] turned over and relinquished possession and control of the water line to [NASCO]" will be prejudiced, and that a failure to grant the relief requested will "jeopardize any claims or abilities of [EPTS] to demonstrate and prove the condition of the water line when control was relinquished to [NASCO]." [Doc. 38, ¶7.] NASCO asserts and EPTS has not disputed that the results demonstrate that the SD-06 "bacterial disinfection" and "test results from commercial laboratory verifying disinfection" requirements that are set out in NASCO's contract with DHS are satisfied.

8.  EPTS states that it "relinquished possession and control" of the water line to NASCO on May 8, 2009. Affidavit of Louis A. Cepeda, Jr., Doc. 40, Exh. B. EPTS filed its motions for preliminary injunctions on July 14, 2009. EPTS has not demonstrated that on the date when it filed its motions for preliminary injunctions, that the water line remained in the same condition as it was more than two months earlier on May 8, 2009. NASCO has submitted evidence to the contrary. NASCO states that it had contractual obligations to fulfill its contract with DHS which required work to be done on the water line, which NASCO performed. Response, Doc. 48 at 6. In addition, EPTS has not demonstrate why information in support of its defenses and claims cannot not be obtained through discovery. The documents attached by NASCO show that the bacteria testing is a requirement of NASCO's contract with the DHS. It is not within the Scope of Work set forth in

the subcontract between NASCO and EPTS. [Doc. 48, Exh. 3 which states that testing is not required.] Moreover, the testing has been completed by an independent water testing company, New Mexico-American Water Company. The testing showed the absence of Total Colliform and the absence of E. Coli.

    9.    In response, EPTS makes conclusory allegations that the test:

> fail[s] to follow the standard and, on information and belief, customarily required testing procedure which specifically requires the independent sampling and testing of water, both functions being performed by and in accordance with the requirements of the laboratory or other certified evaluator itself, not, as in this case, a competitor or a 'replacement' or 'substitute subcontractor,' Constructor's Inc., who is identified as having obtained the referenced water sample that was eventually tested.

Reply, Doc. 55 at 3.

    10.    EPTS continues and appears to allege more testing must be done "for the safety and protection of the ultimate, end use of the project...." *Id*. However, it does not demonstrate why additional testing should be done. It alleges that NASCO failed to meet industry standards but does not provide the standards or state any specific deficiency on the part of NASCO's testing requirements or procedures.

    11.    EPTS fails to address the issue that such testing was not within their scope of work or why it is of any appropriate concern to them. Its response is that:

> "El Paso Trench further denies that the referenced testing was outside the Scope of Work as attached to the Response because El Paso Trench was required to prepare and finalize the water line for a final inspection with all punch list items to be completed and close out documents submitted "prior to the release of final payment by NASCO as Subcontractor."

Reply, Doc. 54 at 6.

    **B.**    **EPTS has failed to show that the alleged threatened injuries to them outweigh damage the proposed injunctions would cause NASCO.**

    12.    EPTS says it will be injured if the condition of the water line changes and if the water

line is used prior to a bacteria test. As discussed above, the condition of the water line has changed and the bacteria test has been performed.

13. NASCO has finished construction on the water line. If there was any need for further work on the water line, NASCO would be harmed by any delay in the ability to perform such work. In addition, it may be subject to a breach of contract claim as the general contractor on this project by DHS.

### C. The injunctions would be adverse to the public interest.

14. EPTS asserts that the public health is threatened due to the "mismanagement" and "lack of competence" of NASCO in connection with NASCO's refusal to allow EPTS to perform certain safety tests on the water line. It further alleges that the water is contaminated. Reply, Doc. 54 at 9. However, once again, other than the bacteria testing EPTS does not refer to specific tests that NASCO failed to perform. The Court also notes that granting the injunctions would be adverse to the public interest. The injunctions would prevent DHS from using the water line and therefore it would be unable to use the FLETC.

### D. EPTS has not shown a substantial likelihood that it will prevail on the merits.

15. EPTS asserts that there is a substantial likelihood that it will prevail on the merits. However, EPTS has not provided any evidence or demonstrated that it will prevail on the merits. In EPTS's memorandum briefs, EPTS merely states that "[t]here is a substantial likelihood that Third Party Plaintiff will prevail on the merits" and "[t]here is a substantial likelihood that Third Party Plaintiff will prevail on the merits because of the evidence set forth and the potential harm if the referenced testing is not performed properly before the water line is placed into production." [Doc. 38 at 2; Doc. 42 at 3.] In its reply brief, EPTS states that "[the] only impediment to and interference with the ability of the Defendants to prevail will be the extent to which Native

American has corrupted and changed and allowed to be corrupted and changed a water line that was in a good, production ready, condition, and was construed and delivered in accordance with the specifications for the project and as delivered to Native American for use by the Department of Homeland Security." [Doc. 54 at 5.] These conclusory statements do not demonstrate that EPTS has shown a substantial likelihood that it will prevail on the merits.

## **RECOMMENDED DISPOSITION**

I recommend finding that Third Party Plaintiff's Motion for Preliminary Injunction to Maintain the Integrity of the Water Line and to Prevent Alteration or Damage [Doc. 36] and Third Party Plaintiff's Motion for Preliminary Injunction to Prevent the Water Line from being Placed into Production until after Testing is Completed and Results Confirm Safety of Water Line [Doc. 40] be denied.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque, New Mexico 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**